**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CIVIL CASE NO. 1:19-cv-00344-MR-WCM**

| | | |
|---|---|---|
| **DAVID L. SETTLEMYER and** | ) | |
| **JAN SETTLEMYER,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | **MEMORANDUM OF** |
| **vs.** | ) | **DECISION AND ORDER** |
| | ) | |
| **BORG-WARNER MORSE TEC,** | ) | |
| **LLC, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| _____ | ) | |

**THIS MATTER** is before the Court on the Motions for Summary

Judgment filed by the Defendants Eaton Corporation, BWDAC, Inc., ZF

Active Safety US Inc., PACCAR, Inc., and Daimler Trucks North America

LLC [Docs. 173, 186, 195, 199, 207].

## I. PROCEDURAL BACKGROUND

The Plaintiffs David L. Settlemyer and Jan Settlemyer filed this

personal injury action on December 12, 2019, against a total of 22

defendants, alleging that Mr. Settlemyer contracted mesothelioma from

breathing asbestos dust as an automobile and truck mechanic at Davis Oil

Company in Statesville, North Carolina from 1979 through 1994 and at three

other jobs.  Specifically, the Plaintiffs allege that Mr. Settlemyer was exposed

to asbestos dust when he and other mechanics serviced the brakes and clutches of various semi-trucks, trailers, and other vehicles at Davis Oil.[1] In their Complaint, the Plaintiffs assert four causes of action: (1) "Negligent Failure to Warn, Defective Design"; (2) "Breach of Implied Warranty"; (3) "Negligence, Negligent Retention and Supervision"; and (4) "Gross Negligence, Willful, Wanton, and Reckless Conduct," for which the Plaintiffs seek punitive damages. [Doc. 1 at 4-18].

Over the course of the litigation, the Plaintiffs voluntarily dismissed their claims against several of the named Defendants. [See Docs. 163 (Navistar, Inc.); 170 (Caterpillar Inc.); 251 (Genuine Parts Company); 293 (CRA Trailers, Inc.)]. The remaining Defendants then moved for summary judgment with respect to all the Plaintiffs' claims. [Docs. 173, 182, 186, 190, 194, 195, 199, 203, 207]. The Plaintiffs, in turn, moved for partial summary

---

[1] The Plaintiffs allege that Mr. Settlemyer was also exposed to asbestos while employed at Clean Air Systems in Statesville, North Carolina from approximately 1994 until 1998; at Dyno Nobel Piedmont Explosives in Olin, North Carolina from 1998 until 2002; and at Purdue Farms in Statesville, North Carolina from approximately 2002 to the present. [Doc. 1: Complaint at ¶ 13]. The Plaintiffs also allege that Mr. Settlemyer was exposed to various asbestos-containing products during non-occupational work in the 1970s, including home and automotive maintenance and repair work. [Id. at ¶ 14]. The Defendants that remain in this action are alleged to be responsible for asbestos-containing products to which Mr. Settlemyer alleges he was exposed to while employed at Davis Oil from 1979 to 1994.

judgment on the Defendants' "affirmative defense" regarding alternate exposure. [Doc. 176].

On November 18, 2021, the Court denied the Plaintiffs' motion for partial summary judgment as well as the motions for summary judgment filed by Defendants Morse Tec LLC, Carlisle Industrial Brake & Friction, Inc., and Pneumo Abex, LLC. [First Text-Only Order entered Nov. 18, 2021]. By way of a separate text order, the Court notified the parties that the motions for summary judgment filed by the Defendants Eaton Corporation ("Eaton"); BWDAC, Inc. ("BWDAC"); ZF Active Safety US Inc. ("ZF Active"); PACCAR, Inc. ("PACCAR"); and Daimler Trucks North America LLC ("DTNA") were granted and that this written Order would follow. [Second Text-Only Order entered Nov. 18, 2021].

## II.  STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is material only if it might affect the outcome of the suit under governing law. Id.

The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted).

Once this initial burden is met, the burden shifts to the nonmoving party. The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Id. at 322 n.3. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. Id. at 324. Rather, the nonmoving party must oppose a proper summary judgment motion with citation to "depositions, documents, electronically stored information, affidavits or declarations, stipulations ..., admissions, interrogatory answers, or other materials" in the record. See id.; Fed. R. Civ. P. 56(c)(1)(a). Courts "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." Eastern Shore Mkt. Inc. v. J.D. Assoc.'s, LLP, 213 F.3d 174, 180 (4th Cir. 2000). The nonmoving party must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party."

4

Anderson, 477 U.S. at 248; accord Sylvia Dev. Corp. v. Calvert County, Md., 48 F.3d 810, 818 (4th Cir. 1995).

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. Anderson, 477 U.S. at 255. "'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" Ricci v. DeStefano, 557 U.S. 557, 586 (2009) (quoting Matsushita v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

## III.   FACTUAL BACKGROUND

Viewing the parties' forecasts of evidence in the light most favorable to the Plaintiffs, the following is a recitation of the relevant facts.

The Plaintiff David Settlemyer was diagnosed with pleural mesothelioma in May 2019 at the age of 57. [Preserved Trial Deposition of David L. Settlemyer ("Settlemyer Trial Dep.") at 9].

Mr. Settlemyer was hired as a mechanic's helper and mechanic at Davis Oil Company of Statesville Inc. ("Davis Oil") in 1979. [Id. at 23-24; 110]. That same year, Mr. Settlemyer briefly left Davis Oil and worked in a dye house mixing chemicals at Beaunit Fabric Corporation. [Id. at 21; 110-11]. However, he thereafter returned to Davis Oil to serve as a mechanic's

5

helper, and subsequently became a full mechanic around 1982. [Id. at 110-11]. He continued to work for Davis Oil until 1994. [Id. at 23].

Mr. Settlemyer was employed by Clean Air Products (a.k.a. Capro Services Inc.) from 1994 to 1997, during which time he removed and installed dust filtration systems in lumberyards, furniture factories, and finishing rooms, and he welded ductwork. [Id. at 26-27]. During this period, he reportedly worked for approximately one month with tires and small repairs at Homer Prevette, a truck stop. [Id. at 25-26]. From 1997 to 2002, Mr. Settlemyer worked as a mechanic, servicing trucks for Dyno Nobel Inc., an explosives company. [Id. at 28-29]. He joined Perdue Foods LLC from 2002 to 2018, where he repaired trucks, similar to his earlier employment with Davis Oil Company. [Id. at 29-30].

Ultimately, Mr. Settlemyer denied asbestos exposure at any of his jobs, with the exception of Davis Oil. [Settlemyer Trial Dep. at 20, 22, 24, 28, 29, 30].

While at Davis Oil, Mr. Settlemyer worked 60 to 70 hours a week on average, performing brake jobs, clutch changes, and engine overhauls. [Id. at 24, 74]. He also fueled trucks, made road calls for truck repair, drove trucks as needed, ordered parts, and maintained shop records on the trucks

and trailers. [Id. at 24; Settlemyer Disc. Dep. Vol. I at 34; Settlemyer Disc. Dep. Vol. II at 71; Settlemyer Disc. Dep. Vol. III at 22-23].

The mechanic work Mr. Settlemyer performed at Davis Oil was on semi-trucks, trailers, passenger vehicles and pick-up trucks. [Settlemyer Trial Dep. at 31]. When he started at Davis Oil in 1979, Davis Oil utilized 19 semitrucks, 20 semi-trailers (including about 5 Fruehauf trailers), and 6 pick-up trucks in its fleet. [Id. at 31-32, 33]. With the exception of one Peterbilt truck purchased in 1982, all of the trucks and trailers that Mr. Settlemyer worked on had been purchased prior to him starting his employment with Davis Oil in 1979. [Id. at 37]. Mr. Settlemyer did not know the service and maintenance histories of any of these trucks or trailers. [Settlemyer Disc. Dep. Vol. II at 153-58, 162, 169, 174-75; Settlemyer Disc. Dep. Vol. III at 40, 45].

Mr. Settlemyer performed mechanic work on these vehicles in a large garage bay that could house three tractors and a trailer. [Settlemyer Disc. Dep. Vol. I at 38]. According to Mr. Settlemyer, Davis Oil had approximately three mechanics, including himself, working in the garage. [Settlemyer Disc. Dep. Vol. III at 68]. Each mechanic performed engine work, including engine overhauls that involved gaskets associated with heads, oil pans, valve covers, water pumps, oil pumps, and exhausts. [Settlemyer Disc Dep. Vol.

7

II at 162].  The mechanics divided the daily responsibilities amongst themselves.  [Id., Vol. I at 37].

Mr. Settlemyer used a putty knife, wire brush, and grinder with sandpaper to remove gaskets.  He installed pre-cut gaskets and gaskets cut from sheet material, changed oil and tires, and used an air hose and a push broom to clean the shop.  [Settlemyer Disc. Dep. Vol. II at 56-57].

Each truck and trailer in the Davis Oil fleet had to have its brakes serviced twice a year.  [Id. at 112].  When removing and installing brakes, Mr. Settlemyer blew debris out of brake drums with compressed air, sanded the insides of drums, and used a putty knife and an air hose to clean off the axle housing.  [Id. at 44-45].  Prior to the mid-1980s, Davis Oil did not utilize new brake shoes for brake changes.  [Id. at 112].  Rather, the mechanics would remove the old linings from brake shoes, either by drilling out rivets or removing bolts, and replace them with newly purchased linings from Consolidated Truck Parts, Inc. or Stone Heavy.  [Id. at 46, 83].  Around 1985, this practice changed, as the shop began purchasing pre-lined brake shoes

8

from Eaton and Rockwell.[2]  [Settlemyer Disc. Dep. Vol. II at 18, 26, 31; Settlemyer Trial Dep. at 50].

At the time Mr. Settlemyer was working with Eaton's pre-lined brake shoes—the mid to late 1980s—Eaton was transitioning to asbestos-free brake shoes.  [Doc. 175-5: 30(b)(6) Dep. at 46, 55].  After a "low-volume introduction" of non-asbestos products in the mid to late 1980s, Eaton was able to transition 90 percent of its high-volume parts over to non-asbestos very quickly.  [Id. at 46, 89].  Once Eaton approved the nonasbestos brake lining, it would have been offered to all customers.  [Id. at 47].  Eaton would have offered the non-asbestos brake to everybody at the same time. [Id. at 48].

This timeline is consistent with Eaton's major third-party suppliers of brake linings, Carlisle and Abex.  Both companies phased out their asbestos brake linings by 1987.  [Doc. 175-6: Carlisle Industrial Brake & Friction, Inc.'s Responses to Plaintiffs' Interrogatories and Request for Production of

---

[2] Mr. Settlemyer initially recalled using Eaton brake linings. [Settlemyer Trial Dep. at 49].  However, he later confirmed that he never relined brake shoes using Eaton linings. [Settlemyer Disc. Dep. Vol. II at 17].  This is consistent with Eaton's Rule 30(b)(6) witness' testimony clarifying that Eaton never manufactured brake linings.  [Doc. 175-5: 30(b)(6) Dep. at 51-52].

9

Documents at 13; Doc. 175-7: Pneumo Abex LLC's Responses to Plaintiffs' Interrogatories at 14].

Mr. Settlemyer testified that he believed the Eaton products he worked with or around contained asbestos. [Settlemyer Disc. Dep. Vol. II at 40]. However, he could not articulate any basis for this belief. Specifically, he testified as follows:

> Q: Do you believe that the Eaton prelined brake shoes that you were using while at Davis Oil contained asbestos?
>
> A: Yes.
>
> Q: What is the basis for that belief?
>
> A: It seemed like I heard something about asbestos in around the '90s, early '90s.
>
> Q: And when you say you heard something about asbestos, was that specifically as to Eaton products or Eaton prelined brake shoes or something else?
>
> A: I'm not sure.
>
> Q: And what do you recall hearing in the early '90s about asbestos?
>
> A: I just heard some products contained asbestos.
>
> Q: Did you know what asbestos was in the early '90s when you heard that some products contained asbestos?
>
> A: No.

Q: Who did you hear from in the early '90s that some products might have contained asbestos?

A: I must have read something on it maybe.

Q: Do you know where you read it?

A: Maybe a poster or something. I – I ain't real sure.

Q: Do you know – the poster that you're recalling, do you recall where it was; how you came to read it?

A: No.

Q: And when you said products might have contained asbestos, is that any particular products that you recall hearing about containing asbestos in the early 1990s?

A: Brakes.

Q: Anything else?

A: I ain't real sure.

Q: Any other reasons for your belief that Eaton prelined brake shoes that you were using while at Davis Oil contained asbestos?

A: I can't really remember.

[Id. at 40-41].

Mr. Settlemyer also removed and installed clutches in the Davis Oil

vehicles. In his deposition, Mr. Settlemyer recalled working with Rockford

and Spicer clutches on 18-wheeler trucks roughly once a year. [Settlemyer Disc. Dep. Vol. I at 74]. In addition to these annual clutch jobs on 18-wheelers, Mr. Settlemyer testified that he also removed old Borg Warner clutches a total of six times on Ford F-150 light duty trucks in the early 1980's while employed as a mechanic at Davis Oil. [Id. at 76-79]. He would then replace these old Borg Warner clutches on these F-150's with remanufactured Borg Warner clutches. [Id. at 76-77].

Mr. Settlemyer could not testify whether these remanufactured clutches contained asbestos. When asked whether he knew the component parts or materials used in these remanufactured clutches, Mr. Settlemyer acknowledged that he did not know. [Id. at 84]. Regarding dust release from the installation of these remanufactured Borg Warner clutches, by Mr. Settlemyer's own admission, there was "a little bit, not much" sanding or grinding of these clutches on installation:

> Q:  Okay. And with these remanufactured clutches on this half-dozen occasions when you had to install those, did you have to do any grinding or sanding to get them installed?
>
> A:  A little bit, not much. Just might be a little ding or something that you'd have to knock down.
>
> Q:  Okay. Was that on all six occasions that you had to do that, or less than six? Or you just don't know?

A:    I can't remember if it was all of them or not. I know some of them was.

Q:    Is it your testimony that you really didn't have to do much of that before you installed the remanufactured clutches?

A:    Yes.

[Id. at 85].

Throughout the 1980s, Mr. Settlemyer was responsible for purchasing replacement parts for the trucks and trailers within the Davis Oil fleet. [See Settlemyer Disc. Dep. Vol. II at 29]. He testified repeatedly that he purchased brake and clutch replacement parts at either Consolidated Truck Parts or Stone Heavy Vehicle. [Settlemyer Trial Dep. at 83, 112, 115; Settlemyer Disc. Dep. Vol. I at 46; Settlemyer Disc. Dep. Vol. II at 28-30; Settlemyer Disc. Dep. Vol. III at 42]. While Mr. Settlemyer testified that he "could have" purchased replacement parts directly from the manufacturers or dealers, he could not recall specifically ordering any replacement parts directly from a manufacturer or dealer. [See Settlemyer Disc. Dep. Vol. II at 83-86; Settlemyer Disc. Dep. Vol. III at 42-44].

## IV.    DISCUSSION

As a federal court sitting in diversity, this Court must apply the substantive law of the forum state, including its choice of law rules. Colgan

Air, Inc. v. Raytheon Aircraft Co., 507 F.3d 270, 275 (4th Cir. 2007). "In tort actions, North Carolina courts adhere to the rule of lex loci and apply the substantive laws of the state in which the injuries were sustained." Connor v. Covil Corp., 996 F.3d 143, 146 n.1 (4th Cir. 2021) (citation omitted). As it is undisputed that Mr. Settlemyer sustained his alleged injuries while in North Carolina, the Court will apply North Carolina law to the Plaintiffs' claims.

In order to survive summary judgment under North Carolina law, a plaintiff in a personal injury asbestos case must present a forecast of evidence showing actual exposure to the alleged offending products. Wilder v. Amatex Corp., 314 N.C. 550, 553-54, 336 S.E.2d 66, 68 (1985). Consistent with this standard, the Fourth Circuit has held that a plaintiff must "prove more than a casual or minimum contact with the product containing asbestos in order to hold [the defendant] liable." Jones v. Owens-Corning Fiberglas Corp., 69 F.3d 712, 716 (4th Cir. 1995) (citation and internal quotation marks omitted). To support a reasonable inference of substantial causation based on circumstantial evidence, the plaintiff must present "evidence of exposure to a specific product on a regular basis over some extended period of time in proximity to where the plaintiff actually worked." Lohrmann v. Pittsburgh Corning Corp., 782 F.2d 1156, 1162-63 (4th Cir. 1986).

Here, the moving Defendants argue that the Plaintiffs have failed to present a forecast of evidence sufficient to satisfy the "frequency, regularity, and proximity" test espoused by <u>Lohrmann</u> with respect to each of the Defendants' respective products. Defendants ZF Active, DTNA, and PACCAR further argue that they cannot be held liable because Mr. Settlemyer was never exposed to any asbestos-containing products for which they were responsible. Because the forecasts of evidence vary as to each Defendant, the Court will address each of the summary judgment motions in turn.

### A. Eaton

The Plaintiffs contend that Mr. Settlemyer was exposed to asbestos-containing axles and brakes manufactured and sold by Eaton.

The Plaintiffs have failed to present a forecast of evidence from which a jury could reasonably conclude that there were Eaton asbestos-containing products present at Davis Oil or that the Eaton products with which Mr. Settlemyer worked actually contained asbestos. While Mr. Settlemyer testified that he believed the Eaton products he encountered were asbestos-containing, he could not articulate any basis for this belief other than he had "heard something about asbestos in around the '90s, early '90s." [Settlemyer Disc. Dep. Vol. II at 40]. The Plaintiffs have not presented any forecast of

15

evidence, other than this inadmissible hearsay, to establish that any of the specific Eaton products with which Mr. Settlemyer worked contained asbestos.

The Plaintiffs contend that when Mr. Settlemyer started to work with Eaton pre-lined brake shoes, these products contained asbestos. However, the undisputed forecast of evidence indicates that Mr. Settlemyer began working Eaton pre-lined shoes around the same time that Eaton was transitioning from asbestos containing to non-asbestos containing parts. Additionally, Mr. Settlemyer worked with other brands of pre-lined brake shoes at the same time; he worked with pre-lined brakes primarily when he was replacing the brakes on the fleet of trucks, which only happened twice a year from each of the 20 trucks or trailers in the fleet; and at least some of these replacements were done by other mechanics. The Plaintiffs cannot establish how many of these brake replacements Mr. Settlemyer performed and, if he performed them, how many times he used Eaton pre-lined brakes as opposed to another brand. Additionally, the Plaintiffs have not forecast any admissible evidence that any pre-lined Eaton brakes that were used actually contained asbestos. Based upon this forecast of evidence, the Plaintiffs cannot demonstrate that Mr. Settlemyer was actually exposed to asbestos from an Eaton product with enough frequency and regularity to

16

satisfy the <u>Lohrmann</u> standard. Accordingly, the Court concludes that Eaton's motion for summary judgment must be granted.

## B. BWDAC

As a preliminary matter, the parties dispute the products for which BWDAC is potentially liable. While it is undisputed that BWDAC sold remanufactured clutches under the "Borg Warner" brand name during the relevant time period, the Plaintiffs contend that BWDAC also sold clutches under the brand name "Rockford" and thus bears liability for any asbestos exposure that Mr. Settlemyer experienced from Rockford clutches. [<u>See</u> Doc. 212: Plaintiffs' Response at 1-2]. The undisputed forecast of evidence presented by BWDAC, however, establishes that BWDAC did not sell clutches under the brand name "Rockford" because it never received a license to use that trade name.[3] [<u>See</u> Doc. 271-2: Kotzum Aff. at ¶ 7 and Doc. 271-1: Trademark Agreement]. Therefore, the only products for which BWDAC could be held potentially liable are Borg Warner remanufactured clutches, which BWDAC began to sell in July 1981.

---

[3] The Plaintiffs appear to acknowledge as much in their Opposition to the Motion for Partial Summary Judgment filed by another defendant in this action, Morse TEC LLC (the successor to Borg-Warner Corporation), when they asserted that "Rockford clutches were designed, manufactured, processed, specified, sold, distributed, and patented by Rockford, a division of Borg-Warner Corporation beginning in 1928 and concluding in 1986." [Doc. 220: Plaintiffs' Response at 4 n.3].

17

In his deposition, Mr. Settlemyer recalled working with remanufactured Borg Warner clutches only on a total of six occasions over the entire forty-year span of his career as a commercial truck mechanic. Of these six occasions, Mr. Settlemyer could recall only that this work involved only a "little bit" of sanding or grinding. [Settlemyer Disc. Dep. Vol. I at 85]. Further, Mr. Settlemyer testified that he had no knowledge of the component parts of these remanufactured clutches, meaning he could not possibly know whether or not they contained asbestos. This forecast of evidence is insufficient to create an issue of material fact as to whether Mr. Settlemyer was exposed to asbestos dust from an asbestos-containing BWDAC product with the frequency, regularity, and proximity required by the Lohrmann standard. As the Plaintiffs have failed meet their burden of proof as to causation, the Court concludes that BWDAC's Motion for Summary Judgment should be granted.

### C.    ZF Active, PACCAR, and DTNA

With respect to the three remaining Defendants, the Plaintiffs allege that they are responsible for asbestos-containing products incorporated in the semi-trucks and trailers that were part of the fleet of vehicles at Davis Oil. Specifically, the Plaintiffs allege that Defendant ZF Active is responsible for Mr. Settlemyer's exposure to asbestos-containing friction components during

18

the brake jobs he performed on Fruehauf trailers; that DTNA is responsible for Mr. Settlemyer's exposure to asbestos-containing components during the brake jobs, clutch work, and gasket replacements he performed on Freightliner trucks; and that PACCAR is responsible for Mr. Settlemyer's exposure to asbestos-containing components during the brake jobs, clutch work, and gasket replacements he performed on Peterbilt trucks and Kenworth trucks within the fleet.

It is undisputed that none of these remaining Defendants manufactured or designed the asbestos-containing parts to which Mr. Settlemyer was allegedly exposed; rather, they were the assemblers and sellers of trucks and trailers that incorporated asbestos-containing parts that were designed and manufactured by other companies. Further, the undisputed forecast of evidence presented to the Court establishes that, with the exception of one new Peterbilt truck[4] acquired in the early 1980s, all of the trucks and trailers at issue were acquired by Davis Oil prior to the commencement of Mr. Settlemyer's employment in 1980, and that the asbestos-containing parts at issue—including brake linings, clutches, and gaskets—required replacement

---

[4] Mr. Settlemyer testified that he may have performed some initial repair work on that truck, but there were also three other mechanics at Davis Oil that also could have performed the first brake, clutch, or engine work on the truck. [Settlemyer Disc. Dep. Vol. II at 177-79; Settlemyer Disc. Dep. Vol. I at 37, 45-46].

on a regular basis such that Mr. Settlemyer would not have had the opportunity to work on any of the original asbestos-containing components of these trucks and trailers. Thus, the question becomes whether these Defendants can be held liable for the use of replacement component parts that potentially exposed Mr. Settlemyer to asbestos, even though the Defendants did not manufacture, sell or distribute those replacement parts.

The Plaintiffs argue that a manufacturer should be held responsible for replacement components manufactured and sold by others where the manufacturer has specified or recommended asbestos-containing replacement parts or its product is designed so that it cannot be used without asbestos. Under North Carolina law, in order to impose liability for asbestos exposure, a plaintiff must (1) identify an asbestos-containing product *for which a defendant is responsible*, (2) prove that he has suffered damages, and (3) prove that defendant's asbestos-containing product was a substantial factor in causing his damages." Agner v. Daniel Int'l Corp., No. CIV 3:98CV220, 2007 WL 57769, at *4 (W.D.N.C. Jan. 5, 2007) (emphasis added) (citation omitted); see also Wilder, 314 N.C. at 553, 336 S.E.2d at 67-68 ("Whether the trial court properly allowed [the defendant's] motion for summary judgment depends on whether the forecast of evidence demonstrated that plaintiff at trial would not be able to show any exposure to

20

asbestos products *manufactured, sold or distributed by this defendant*.")
(emphasis added). North Carolina does not have such a "design,
specification or recommendation" exception to its requirement that a
plaintiff's injury be caused by a defendant's own asbestos-containing
product. See Woolard v. Carrier Corp., No. 1:18CV410, 2020 WL 2572278,
at *5 (M.D.N.C. May 21, 2020) ("North Carolina's appellate courts have not
yet spoken on whether a defendant-manufacturer can be held liable for
injuries arising from the use of a third party's asbestos-containing component
in connection with its product."). Federal courts within North Carolina,
including this Court, have reasoned that Lohrmann's requirement of proof of
evidence to a *specific* product precludes imposing liability based solely on
exposure to asbestos products provided by third parties. See Young v. Am.
Talc Co., No. 1:13CV864, 2018 WL 9801011, at *4 (M.D.N.C. Aug. 3, 2018);
Harris v. Ajax Boiler, Inc., No. 1:12-cv-00311-MR-DLH, 2014 WL 3101941,
at *6 (W.D.N.C. July 7, 2014).

Even if North Carolina recognized such an exception to the Lohrmann
causation standard, however, the Plaintiffs have failed to forecast any
evidence that the Defendants specified or even recommended that only
asbestos-containing replacement parts be used. For example, the Plaintiffs
have forecast evidence that Fruehauf used asbestos-containing original and

replacement parts in its original equipment trailers until the mid-1980's and that Fruehauf recommended the use of Fruehauf replacement parts. [See Doc. 217-1: Przepiora Dep. at 8; Doc. 217-2: Przepiora Dep. at 33; Doc. 217-3: Grothouse Dep. at 29; Doc. 217-7: Silvasi Dep. at 3]. Recommending that Fruehauf brand replacement parts be used, however, is a far cry from a *specification* that asbestos-containing replacement brake parts must or should be used with its trailers. Fruehauf's customers were free to use whatever type of brake linings they wished, [see Doc. 217-3 at 29], and, as shown by Davis Oil itself, owners of Fruehauf trailers often chose brake replacement parts from manufacturers and suppliers other than Fruehauf.

Similarly, the Plaintiffs point to the fact that Freightliner did not approve of non-asbestos replacement parts for its trucks until well into the 1980s, and that Freightliner recommended replacing parts on its semi-tractors and trucks with "compatible replacement parts." [Doc. 213-3: ZF Active Interrogatory Responses Nos. 3, 10]. To recommend that a part be "compatible," however, speaks more to the fit and functionality of the replacement part such that it meets performance specifications rather than the nature of the materials used to make the replacement part. In other words, recommending a "compatible" replacement is not evidence that Freightliner recommended, specified or required the use of asbestos-

containing replacement parts. There is no forecast of evidence that the only available compatible replacement parts contained asbestos.

Likewise, the Plaintiffs cannot show that PACCAR instructed or specified that its trucks be repaired with after-market replacement parts containing asbestos. The Plaintiffs have not forecast any evidence that PACCAR specified its trucks be serviced using specific brands or substitute products that necessarily contained asbestos, or that PACCAR trucks' operation required the use of asbestos to function properly. To the contrary, PACCAR's undisputed verified discovery responses indicate that any comparable brake, clutch or gasket material could be used and installed as a substitute product in Kenworth and Peterbilt trucks. [Doc. 200-5: PACCAR Interrogatory Response No. 10; Doc. 200-8: PACCAR Response to Request for Admission No. 20].

The same analysis is true for the Plaintiffs' claims based on the duty to warn. As the Fourth Circuit explained in Baughman v. General Motors Corporation, 780 F.2d 1131, 1132-33 (4th Cir. 1986), it is the duty of the replacement part manufacturer to warn against potential defects or hazards associated with its own replacement parts. An assembler cannot be liable for a defective replacement part that it "did not design, manufacture or place into the stream of commerce." Id. at 1132. Neither ZF Active, DTNA nor

PACCAR designed or manufactured the replacement parts used by Mr. Settlemyer in servicing the trucks and trailers within the Davis Oil fleet. North Carolina law does not place the duty to warn of potential defects in replacement parts on assemblers such as these Defendants.

In sum, the Plaintiffs have not forecast evidence that ZF Active, DTNA or PACCAR sold or manufactured any asbestos-containing replacement parts used by Mr. Settlemyer or that these Defendants specified or required that asbestos-containing replacement parts be used in the maintenance of their respective products. For the foregoing reasons, the Court concludes that ZF Active, DTNA, and PACCAR are not liable for the allegedly defective replacement asbestos-containing parts which were incorporated into their respective trucks and trailers during the course of Mr. Settlemyer's career at Davis Oil. Accordingly, the Court concludes that the Plaintiffs' claims against these Defendants fail, and ZF Active, DTNA, and PACCAR are entitled to summary judgment as a matter of law.

## O R D E R

**IT IS, THEREFORE, ORDERED** that the Defendants' Motions for Summary Judgment [Docs. 173, 186, 195, 199, 207] are **GRANTED**, and the Plaintiffs' claims against the Defendants Eaton Corporation, BWDAC, Inc.,

ZF Active Safety US Inc., PACCAR, Inc., and Daimler Trucks North America

LLC are **DISMISSED WITH PREJUDICE**.

**IT IS SO ORDERED.**

Signed: December 6, 2021

Martin Reidinger
Chief United States District Judge

25