# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### ASHEVILLE DIVISION
### CIVIL CASE NO. 1:19-cv-00344-MR-WCM

| | |
|---|---|
| DAVID L. SETTLEMYER and JAN SETTLEMYER, | ) ) ) |
| Plaintiffs, | ) ) |
| vs. | ) ) **MEMORANDUM OF** ) **DECISION AND ORDER** |
| BORG-WARNER MORSE TEC, LLC, et al., | ) ) ) |
| Defendants. | ) ) |
| _____ | ) |

**THIS MATTER** is before the Court on the Defendants' Daubert[1] Motions to Exclude the Testimony of the Plaintiffs' Expert Edwin Holstein [Docs. 171, 179, 180, 184, 188, 196]; the Defendant Daimler Trucks North America LLC's Daubert Motion to Exclude the Cumulative Exposure Opinion as Evidence of Specific Causation [Doc. 205]; the Plaintiffs' Daubert Motion to Exclude Speculative, Irrelevant and/or Cumulative Expert Testimony [Doc.

_____

[1] Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993).

178]; and the Plaintiffs' <u>Daubert</u> Motion to Exclude the Causation Opinions of Defendants' Expert Witnesses [Doc. 202].[2]

## I.  BACKGROUND

The Plaintiffs David L. Settlemyer and Jan Settlemyer filed this personal injury action on December 12, 2019, alleging that Mr. Settlemyer contracted mesothelioma from breathing in asbestos dust while working as an automobile and truck mechanic at Davis Oil Company in Statesville, North Carolina from 1979 through 1994 and at three other jobs.[3]  [Doc. 1]. Specifically, the Plaintiffs allege that Mr. Settlemyer was exposed to asbestos dust when he and other mechanics serviced the brakes and clutches of various semi-trucks, trailers, and other vehicles at Davis Oil.  [Id.

---

[2] By way of a separate Order, the Court has granted summary judgment to a number of the Defendants who filed <u>Daubert</u> motions in this case, including Daimler Trucks North America, LLC, ZF Active Safety US Inc., BWDAC, Inc, and PACCAR, Inc.  The bases for granting summary judgment to these Defendants did not depend on the resolution of the issues raised in these <u>Daubert</u> motions.  Further, because the issues raised by these now dismissed Defendants largely overlap with issues raised by the other Defendants who remain in this action, the Court will proceed to address all of the pending <u>Daubert</u> motions.

[3] The Plaintiffs allege that Mr. Settlemyer was also exposed to asbestos while employed at Clean Air Systems in Statesville, North Carolina from approximately 1994 until 1998; at Dyno Nobel Piedmont Explosives in Olin, North Carolina from 1998 until 2002; and at Purdue Farms in Statesville, North Carolina from approximately 2002 to the present. [Doc. 1: Complaint at ¶ 13].  The Plaintiffs also allege that Mr. Settlemyer was exposed to various asbestos-containing products during non-occupational work in the 1970s, including home and automotive maintenance and repair work.  [Id. at ¶ 14].  The Defendants that remain in this action are alleged to be responsible for asbestos-containing products to which Mr. Settlemyer alleges he was exposed to while employed at Davis Oil from 1979 to 1994.

at ¶¶ 13, 15].  In their Complaint, the Plaintiffs assert four causes of action: (1) "Negligent Failure to Warn, Defective Design"; (2) "Breach of Implied Warranty"; (3) "Negligence, Negligent Retention and Supervision"; and (4) "Gross Negligence, Willful, Wanton, and Reckless Conduct," for which the Plaintiffs seek punitive damages.  [Id. at 4-18].

The Defendants now move pursuant to Rules 403, 702, and 703 of the Federal Rules of Evidence and Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993), to specifically prohibit the Plaintiffs' expert, Dr. Edwin Holstein, from testifying as to specific causation of the Plaintiff's mesothelioma.  [Docs. 171, 179, 180, 184, 188, 196].  Additionally, the Defendant Daimler Trucks North America LLC ("DTNA") moves to exclude the testimony of any of the Plaintiffs' experts, including Dr. Holstein and Dr. Brent Staggs, to the extent that they seek to offer a "cumulative exposure" opinion.  [Doc. 205].

The Plaintiff in turn seek to exclude any speculative, irrelevant and/or cumulative expert testimony from the Defendants' experts.[4]  [Doc. 178].

The Court held a hearing on these motions on June 25, 2021.

_____

[4] The Plaintiffs also filed a motion seeking to exclude the causation opinions of the Defendants' expert witnesses.  [Doc. 202].  At the hearing on these motions, however, the Plaintiffs' counsel indicated that they intended to withdraw this motion.  Accordingly, the Plaintiff's motion [Doc. 202] will be denied as moot.

## II. STANDARD OF REVIEW

Rule 702 of the Federal Rules of Evidence permits a witness to provide expert testimony if: "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702. "Federal Rule of Evidence 702 appoints trial judges as 'gatekeepers of expert testimony' to protect the judicial process from the 'potential pitfalls of junk science.'" Sardis v. Overhead Door Corp., 10 F. 4th 268, 275 (4th Cir. 2021) (quoting in part United States v. Bonner, 648 F.3d 209, 215 (4th Cir. 2011)). In fulfilling this essential gatekeeping function, a trial court must "ensure that an expert's testimony both rests on a *reliable* foundation and is *relevant* to the task at hand." Nease v. Ford Motor Co., 848 F.3d 219, 229-30 (4th Cir. 2017) (quoting Daubert, 509 U.S. at 597) (emphasis in original).

An expert's opinion is "reliable" if it is "based on scientific, technical, or other specialized *knowledge* and not on belief or speculation," and if any inferences derived by the expert are "derived using scientific or other valid methods." Nease, 848 F.3d at 229 (quoting Oglesby v. Gen. Motors Corp.,

4

190 F.3d 244, 250 (4th Cir. 1999)).  Daubert provides a number of "guideposts" to assist trial courts in determining the reliability of a proffered expert opinion: (1) whether the expert's theory or technique can, or has been, tested; (2) whether the theory or technique has been subject to peer review and publication; (3) in the case of a particular technique, the known or potential rate of error; and (4) whether the methodology is generally accepted in the witness's field of expertise.  Nease, 848 F.3d at 229 (citing Daubert, 509 U.S. at 593-94).  These guideposts, however, are not exhaustive, as the relevance of some factor may "depend[ ] on the nature of the issue, the expert's particular expertise, and the subject of his testimony."  Kumho Tire Co. v. Carmichael, 526 U.S. 137, 150 (1999).  A trial court has "broad latitude" to determine whether these guideposts are "reasonable measure of reliability in a particular case."  Id. at 153.

An expert's opinion is "relevant" if it has "a valid scientific connection to the pertinent inquiry" and helps "the trier of fact to understand the evidence or to determine a fact in issue."  Daubert, 509 U.S. at 592.  "Simply put, if an opinion is not relevant to a fact at issue, Daubert requires that it be excluded."  Sardis, 10 F. 4th at 281.

5

## III.    DISCUSSION

### A.    Defendants' Motions to Exclude Opinions of Edwin Holstein

Dr. Holstein is a licensed physician and is Board Certified in Internal Medicine and Preventative Medicine, with a subspecialty in Occupational Medicine.   [Holstein Report at 2].   He was trained in preventive and occupational medicine at Mount Sinai School of Medicine and became a faculty member at that institution in 1978.  [Id. at 2-3].  He worked at Mount Sinai directly with Dr. Irving Selikoff, who is regarded as the foremost expert in the world on the health effects of asbestos.   [Id.].   Dr. Holstein has conducted original research on the health effects of asbestos and served as a consultant to numerous corporations, cities/counties/states, and federal agencies on environmental health.  [Id.].  He regularly assesses the amount of exposure a person or population has received to a toxic substance and the likely health effects thereof.  [Id.].

In his report, Dr. Holstein opines that Mr. Settlemyer's exposure to asbestos in connection with his work with each of the named Defendants' products  "each individually constituted a substantial factor in the causation of his malignant mesothelioma."  [Holstein Report at 10].  He further opines that Mr. Settlemyer's "cumulative exposures to asbestos while employed at

6

Davis Oil Company were the direct and sole cause of his bilateral calcified pleural plaques and his malignant mesothelioma." [Id.].

In formulating these causation opinions, Dr. Holstein did not calculate the dose of exposure that Mr. Settlemyer received from any of the Defendants' products. Therefore, he could not opine as to the fiber-years[5] of cumulative asbestos exposure that Mr. Settlemyer had or to the extent such exposure would have been attributable to any of the Defendants. Dr. Holstein admitted in his deposition that he was qualified to make such calculations, but that he did not think they were necessary to do in this case. [Holstein Dep. at 58-59, 74]. When pressed further by Abex's counsel at his deposition, Dr. Holstein explained as follows:

> Q    All right. Are you – so you haven't made an attempt to try to make a determination, for example, if Mr. Settlemyer was exposed to a fiber – a total fiber year cumulatively of exposure to an Abex product in the course of his career, have you?
>
> *    *    *
>
> A    I have not tried to develop such a number, but **it's very obvious to me based on extensive previous experience that the result would be in the range that by any reasonable definition would constitute a substantial factor** in causation of his mesothelioma.

---

[5] A "fiber-year" is a unit of measurement used by epidemiologists to express a person's cumulative dose of exposure to asbestos over time. See Yates v. Ford Motor Co., 113 F. Supp. 3d 841, 855 n.9 (E.D.N.C. 2015).

7

Q      (By Mr. Nadolink) Okay. But you haven't assigned a number to it, whether it be 10 fiber years or a fiber year or a tenth of a fiber year, or anything like that; right?

A      That's correct. And the reason is that, first of all, it is not generally how causation is determined in the medical literature. And, secondly, it's not required by North Carolina's guidance on how to determine whether exposures are substantial factors in causation or not.

So for both those reasons, and also **because the exposure was so obviously – so obviously qualifies as a substantial factor based on me having made so many calculations of that sort over the years, I didn't have to do the calculation. I knew that it would lead to the same conclusion.**

[Holstein Dep. at 59-60].

By failing to calculate the particular dose exposures attributable to each Defendant, however, Dr. Holstein's causation opinions are merely speculation, based upon Dr. Holstein's assumptions regarding the data generated by other experts and his years of expertise. While experts certainly are free to extrapolate from other experts' data, "nothing in either Daubert or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." General Elec. Co. v.

8

Joiner, 522 U.S. 136, 146 (1997).  The Court finds that such an "analytical gap" is present here.  Dr. Holstein simply does not offer a sufficient explanation to connect the data which he reviewed with his ultimate conclusions.  Instead, he asserts that his findings are "obvious" and that the Court should accept his conclusions based upon his years of expertise in the relevant field.  Under Daubert, this is clearly insufficient.

Further, while Dr. Holstein purports to offer his causation opinions to a "reasonable degree of scientific certainty," it does not appear that Dr. Holstein's opinions are based upon any sound medical or scientific methodology. Dr. Holstein states at the outset of his report that he was asked "to develop opinions on whether or not the asbestos exposures experienced by Mr. Settlemyer in connection with each of the currently named defendants constituted a substantial contributing factor in the causation of his malignant mesothelioma."  [Holstein Report at 1].  However, at his deposition, he admitted that whether a particular exposure constates a "substantial contributing factor" is not a concept that is recognized in his field.  [See Holstein Dep. at 70 ("[Y]ou will not find any place in which medical authorities have tried to define what constitutes a substantial factor in causation of a malignant mesothelioma . . . . It's not an area in which my profession of

9

medicine and my specialty of medicine has felt any need or usefulness in trying to define….")].

Dr. Holstein states that he developed his specific causation opinions based on "[his] understanding that the applicable law in this case requires that the Plaintiff demonstrate that the exposures to asbestos experienced by Mr. Settlemyer in connection with any specific defendant are 'more than *de minimis*,' and that the exposures should be characterized by regularity, frequency and proximity to Mr. Settlemyer." [Holstein Report at 1-2, 10]. This is nothing more than a restatement of the *legal causation standard* first articulated by the Fourth Circuit in Lohrmann v. Pittsburgh Corning Corp., 782 F.2d 1156, 1162-63 (4th Cir. 1986) ("To support a reasonable inference of substantial causation from circumstantial evidence, there must be evidence of exposure to a *specific* product on a *regular* basis over some *extended* period of time in *proximity* to where the plaintiff *actually* worked.") (emphasis added). The Lohrmann standard is a legal standard designed to guide the trier of fact in evaluating the circumstantial evidence presented and determining whether a plaintiff has met his or her burden of demonstrating substantial causation in an asbestos exposure case. See Finch v. Covil Corp., 972 F.3d 507, 513-14 (4th Cir. 2020). Each of the components of the Lohrmann standard are inherently fact-specific: was the plaintiff exposed to

10

a *specific* product? did that exposure occur on a *regular* basis? did this exposure occur over an *extended* period of time? did this exposure occur in *proximity* to where the plaintiff *actually* worked? Significantly, there is nothing about any of these components that requires the assistance of an expert to understand. A jury could readily assess the evidence regarding a plaintiff's work history and determine for themselves whether the plaintiff's exposure to a specific asbestos-containing product was characterized by the regularity, frequency and proximity required by <u>Lohrmann</u> to establish substantial causation. Expert testimony should be admissible only if it could "help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a). The Court fails to see how Dr. Holstein's causation opinions would be in any way helpful to the jury in making this determination.

The Plaintiffs have failed to establish that Dr. Holstein's causation opinions are the result of a sound scientific methodology that was reliably applied to the facts of the case. Dr. Holstein freely admitted that he made no effort to quantify Mr. Settlemyer's cumulative exposure or exposure to any particular asbestos-containing product, instead concluding that it was "obvious" in light of his review of the relevant materials and his experience that, regardless of what the particular calculation of exposure would be, it

11

was sufficiently substantial. [Holstein Dep. at 59-60]. Dr. Holstein then applied a legal, rather than medical or scientific, standard to determine whether Mr. Settlemyer's exposure to each of the Defendant's products constituted a substantial factor in the causation of his mesothelioma. Dr. Holstein's "methodology" in this regard cannot be tested; it has no known error rate; and it has not been published or subjected to the scrutiny of peer review. As such, the Court concludes that Dr. Holstein's causation opinions are not reliable, nor would they be helpful to the jury in determining the issue of causation. Accordingly, the Court will grant the Defendants' motions to exclude the specific causation opinion testimony of Dr. Holstein.

### B. DTNA's Motion to Exclude "Cumulative Exposure" Opinion of Dr. Brent Staggs

Brent C. Staggs, M.D., is a board-certified physician in Anatomic Pathology, Clinical Pathology and Hematopathology. [Doc. 206-6: Staggs Supp. Report at 2]. He is licensed to practice medicine in five states, and as a part of his practice, he regularly reviews and examines tissue samples, including tumor and lung biopsies. [Id. at 1-2]. He has reviewed hundreds of cases of asbestosis, asbestos related pleural disease, lung carcinomas and mesotheliomas, both in clinical practice and in the setting of medical legal consultation. [Id.].

12

In his original report dated October 14, 2020, Dr. Staggs sets forth the general principles of asbestos-related disease; discusses the studies and reports identifying a causal relationship between asbestos-containing products and diseases such as asbestosis, lung cancer, and mesothelioma; and summarizes his review of the case materials, including Mr. Settlemyer's medical records and deposition testimony. [Doc. 206-7: Staggs Original Report at 2-15]. He then lists in a section entitled "Asbestos Product and Defendant Information" the asbestos-containing products and the defendants to which such products are attributable. [Id. at 15-17]. Dr. Staggs then offers opinions on both general causation and defendant-specific causation. [Staggs Oct. 14, 2020 Report ("Original Report") at 15-18]. With respect to general causation, Dr. Staggs opines that "Mr. Settlemyer has malignant mesothelioma of the pleura, as well as pleural plaques" and that "[t]he development of Mr. Settlemyer's mesothelioma and pleural plaques was caused by his lengthy history of asbestos exposure." [Id. at 17-18]. With respect to specific causation, Dr. Staggs opines in his initial report as follows:

> [A]s to specific causation, Mr. Settlemyer had significant and identified exposures to asbestos from his frequent and regular work in proximity to asbestos containing automotive, truck, and trailer products, including brakes, clutches and gaskets over his

13

working lifetime. **It is my opinion to a reasonable degree of medical certainty that the above named and identified products in the Asbestos Product and Defendant Information section were each substantial factors causing Mr. Settlemyer's malignant mesothelioma and pleural plaques.**

[Id. at 18] (emphasis added).

In a supplemental report issued approximately 4½ months later, Dr. Staggs restates the sections of his original report, including the general principles of asbestos-related disease; the studies and reports identifying a causal relationship between asbestos-containing products and diseases such as asbestosis, lung cancer, and mesothelioma; and the summary of his review of the case materials, including Mr. Settlemyer's medical records and deposition testimony. [Doc. 206-7: Staggs Supp. Report at 2-17]. Dr. Staggs, however, omits in his supplemental report the section entitled "Asbestos Product and Defendant Information" and omits his specific causation opinion that each of the identified Defendants' products were a substantial factor in causing Mr. Settlemyer's malignant mesothelioma and pleural plaques.

It appears that Dr. Staggs has withdrawn his specific causation opinion by failing to include it in his supplemental report. As such, DTNA's motion to exclude his specific causation opinion is moot. To the extent that Dr. Staggs

has not withdrawn this opinion, the Court concludes that such opinion should be excluded for the same reasons identified <u>supra</u> for excluding the specific causation opinions of Dr. Holstein: namely, that no analysis is offered to identify the particular dose attributable to any particular defendant and because the proffer of an opinion regarding "substantial factor" causation would be tantamount to a legal conclusion and thus would not be helpful to the jury. Accordingly, DTNA's motion to exclude the specific causation testimony of Dr. Staggs is granted.

### C. Plaintiffs' Motion to Exclude Defendants' Expert Testimony

The Plaintiffs move to exclude "speculative, irrelevant and/or cumulative expert testimony" offered by a number of the Defendants' expert witnesses. [Doc. 178].

First, the Plaintiffs seek to exclude the opinions of Tim D. Oury, M.D., James D. Crapo, M.D., and Gail D. Stockman, M.D., Ph.D., that Mr. Settlemyer's exposures to amphibole[6] forms of asbestos caused his

---

[6] The Eastern District of North Carolina has helpfully described the different types of asbestos as follows:

> "Asbestos" is a generic term used to describe certain naturally-occurring minerals. There are different forms of asbestos, including chrysotile, crocidolite, cummingtonite-grunerite (also known as amosite), actinolite, anthophyllite, and tremolite asbestos. "Amphibole" asbestos includes

mesothelioma.    The Plaintiffs also seek to exclude the opinions of industrial

hygienists Sheldon H. Rabinovitz, Ph.D., and Mary A. Finn, Ph.D., who

opined Mr. Settlemyer was at an increased risk of developing mesothelioma

from his exposure to amphibole asbestos.  The Plaintiffs argue that these

opinions are "based on unsupported speculation and lacking a reliable

foundation," as there is no evidence in the record that Mr. Settlemyer was

exposed to amphibole asbestos.[7]  [Doc. 178 at 3-4, 6-7].

As several of these experts noted, Mr. Settlemyer has bilateral pleural

plaques, a condition which these experts opine is indicative of exposure to

amphibole asbestos.  [See Doc. 229-14: Stockman Dep. at 26-27; Doc. 229-

8: Oury Dep. at 27; Doc. 233-6: Crapo Report at 2].  This conclusion is

supported by peer-reviewed literature relied upon by both the Plaintiffs' and

Defendants' experts.  [See Doc. 233 at 13-18 (listing studies)].  Although Mr.

---

amosite, crocidolite and tremolite. "Amphiboles" are classified in a
mineralogical family separate from chrysotile asbestos.

Yates v. Ford Motor Co., 113 F. Supp. 3d 841, 853 (E.D.N.C. 2015) (citations omitted).
It is generally recognized that chrysotile asbestos is less potent than amphibole.  See
Bartel v. John Crane, Inc., 316 F. Supp. 2d 603, 606 (N.D. Ohio 2004) ("The prevailing
scientific and medical view is that amphibole asbestos fibers have significantly greater
propensity to cause disease than chrysotile asbestos.").

[7] The Plaintiffs do not challenge the qualifications of any of the Defendants' expert
witnesses.

16

Settlemyer may claim that he has never had any exposure to amphibole asbestos, the existence of pleural plaques in both lungs indicates exposure to a more virulent form of asbestos, according to the Defendants' experts. While the Plaintiffs may disagree with these experts' conclusions, the experts' reasoning and basis for these opinions appear to be reliable and the result of sound methodology. Although most of these experts could not point to any specific amphibole exposure that Mr. Settlemyer had experienced,[8] their opinions are nevertheless relevant and reliable. The Plaintiff's motion to exclude these experts' opinions as unduly speculative, therefore, is denied.

Next, the Plaintiffs seek to exclude the opinions of Dominik D. Alexander, Ph.D, and May Finn, Ph.D., related to the alternative causes or

---

[8] While some of the Defendants' experts did not identify any specific amphibole exposure, at least one of Pneumo Abex's experts, Mary Finn, Ph.D., noted that there was some indication in Mr. Settlemyer's medical records that such an amphibole exposure may have occurred. [Doc. 232-4: Finn Report at 52]. Additionally, the Court notes that Mr. Settlemyer reported to a doctor at Iredell Memorial Hospital in December 2018 that "he had worked in a[n] asbestos exposed factory in the 70s for an extended period of time." [Doc. 230-2: Medical Records at 1]. In addition, Mr. Settlemyer's father and brothers worked at a brickyard, and the family home was right beside it. [Settlemyer Dep. Vol. 1 at 10-11, 21]. He also worked at a Beaunit plant in 1979 for about a month. [Id. at 68]. Further, Mr. Settlemyer worked at Clean Air Products from 1994 to 1997 tearing out and installing air filtration systems. [Settlemyer Trial Dep. at 26-27].

risk factors of mesothelioma as irrelevant and/or unduly prejudicial and thus excludable under Federal Rule of Evidence 403.[9]  [Doc. 178 at 9-10].

Contrary to the Plaintiffs' arguments, the association between exposure to amphibole asbestos and mesothelioma is highly relevant to this case.  As Dr. Alexander explained in his report:

> Historically, commercial serpentine asbestos (chrysotile) and amphibole asbestos (amosite, crocidolite) has been used in up to 3,000 manufacturing processes and products (Williams, Phelka, and Paustenbach 2007). Accordingly, risk of mesothelioma among workers in asbestos exposed occupations, including individuals handling, disturbing, or manipulating asbestos containing products, has been analyzed in hundreds of analytical epidemiologic studies. **The epidemiologic evidence clearly shows that exposure to amphibole asbestos fibers, namely commercial amosite and crocidolite, are associated causally with pleural and peritoneal mesothelioma.** (Pavlisko and Sporn 2014, Sporn and Roggli 2004, Browne 1994, Craighead 2008, IARC 2012, Ribak and Ribak 2008, Berman and Crump 2008b, a, Churg 1998, Finkelstein 1989, Gibbs and Berry 2008, Levin et al. 1998, Ribak, Seidman, and Selikoff 1989, Selikoff, Hammond, and Churg 1972, Seidman, Selikoff, and Hammond 1979, Seidman, Selikoff, and

[9] The Plaintiffs also seek to exclude the opinions of industrial hygienist Jennifer Sahmel's opinions regarding the utilities of asbestos as irrelevant and unduly prejudicial.  [Doc. 178 at 9].  Although the Plaintiffs assert that both Morse Tec, LLC and BWDAC retained Ms. Sahmel, BWDAC denies ever retaining her.  [See Doc. 231 at 1-2].  Thus, Morse Tec, LLC is the only Defendant to have retained Ms. Sahmel.  Morse Tec, LLC, however, did not respond to the Plaintiffs' motion and therefore does not appear to contest the exclusion of Ms. Sahmel's testimony.  Accordingly, the Plaintiff's motion to exclude Ms. Sahmel's testimony regarding the utilities of asbestos is granted.

18

Gelb 1986, Hodgson and Darnton 2000, Sluis-Cremer et al. 1992, Hughes, Weill, and Hammad 1987, Levin et al. 2016, Roggli et al. 2002a, Oury, Sporn, and Roggli 2014, Acheson et al. 1982, Armstrong et al. 1984, Armstrong et al. 1988, Berry et al. 2012, Botha, Irwig, and Strebel 1986, De Klerk et al. 1989, De Klerk et al. 1994, Gaensler and Goff 1990, Hansen et al. 1993b, Hansen et al. 1998a, Hilt, Rosenberg, and Langard 1981, Hobbs et al. 1980, Jones et al. 1980, Kielkowski, Nelson, and Rees 2000, McDonald and McDonald 1978, McDonald, Harris, and Berry 2006, Musk et al. 2008, Reid et al. 2007, Reid, Heyworth, de, et al. 2008, Reid et al. 2009, Reid, Heyworth, De Klerk, et al. 2008, Reid et al. 2013, Rees et al. 1999, Talcott et al. 1989, Wignall and Fox 1982, Schneider, Sporn, and Roggli 2008, White, Nelson, and Murray 2008, Wagner, Sleggs, and Marchand 1960, Certainteed 2009, Galateau-Salle 2013, J. M. Manufacturing 2012, Noble, Kawahara, and Cooper 1977, Ferrante et al. 2007, Ferrante et al. 2017, Magnani et al. 2008, Menegozzo et al. 2011, Oddone et al. 2014, Oddone et al. 2017).

[Doc. 231-10: Alexander Report at 15]. The Plaintiffs' own expert, Dr. Staggs, confirms in his report that there is a causal connection between amphibole exposure and malignant mesothelioma. [See Doc. 206-7: Staggs Report at 17]. Accordingly, the Court concludes that the opinions of Dr. Alexander and Dr. Finn regarding amphibole asbestos and mesothelioma are relevant to the cause of Mr. Settlemyer's disease and are therefore admissible. The Plaintiffs' motion to exclude this opinion evidence is denied.

Finally, the Plaintiffs ask the Court to "limit cumulative testimony offered by Defendants' experts." [Doc. 178 at 10-11]. The Plaintiffs' request is premature. This is a multi-defendant action, and each Defendant has prepared its own individual case, in anticipation of the possibility that the Plaintiffs may settle with all the other Defendants, leaving only that one Defendant left for trial. As such, the Defendants concede that there some of their experts' testimony might become cumulative. [See, e.g., Doc. 231 at 20; Doc. 233 at 24]. Any decisions regarding whether to limit the Defendants' expert testimony will have to be made at the time of trial, when the Court and the parties have a better sense of which Defendants remain in the case and which witnesses will be called. Accordingly, the Plaintiffs' request to exclude any "cumulative" opinions by the Defendants' experts is denied without prejudice to renewal at the time of trial.

## O R D E R

**IT IS, THEREFORE, ORDERED** that:

(1)     The Defendants' <u>Daubert</u> Motions to Exclude the Testimony of the Plaintiffs' Expert Edwin Holstein [Docs. 171, 179, 180, 184, 188, 196] are **GRANTED**;

(2)     The Defendant Daimler Trucks North America LLC's <u>Daubert</u> Motion to Exclude the Cumulative Exposure Opinion as Evidence of Specific Causation [Doc. 205] is **GRANTED**;

(3)     The Plaintiffs' <u>Daubert</u> Motion to Exclude Speculative, Irrelevant and/or Cumulative Expert Testimony [Doc. 178] is **GRANTED IN PART** and **DENIED IN PART** as set forth in this Order; and

(4)     The Plaintiffs' <u>Daubert</u> Motion to Exclude the Causation Opinions of Defendants' Expert Witnesses [Doc. 202] is **DENIED AS MOOT**.

**IT IS SO ORDERED**.

Signed: December 6, 2021

Martin Reidinger
Chief United States District Judge

21